UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. CRAMER,<br><br>    Plaintiff,<br><br>    v.<br><br>C. DUCART, et al.<br><br>    Defendants. | Case No. 15-cv-04476-VC   (PR)<br><br>**ORDER SERVING COGNIZABLE CLAIMS; DISMISSING OTHER CLAIMS WITH LEAVE TO AMEND; DISMISSING ONE CLAIM WITHOUT PREJUDICE TO REFILING IN SEPARATE COMPLAINT** |

James A. Cramer, an inmate at Pelican Bay State Prison proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against fifteen employees at Pelican Bay. Cramer has filed a motion for leave to proceed *in forma pauperis*, which is granted in a separate order. The Court now addresses the claims asserted in Cramer's complaint.

## DISCUSSION

**I. Standard of Review**

A federal court must screen any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, to dismiss any claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

    **A. Section 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or fails to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

But there is no respondeat superior liability under § 1983. *Lemire*, 726 F.3d at 1074. That is, a supervisor is not liable merely because the supervisor is responsible, in general terms, for the actions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984). A supervisor may be liable only on a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). It is insufficient for a plaintiff to allege generally that supervisors knew about the constitutional violation or that they generally created policies and procedures that led to the violation, without alleging "a specific policy" or "a specific event" instigated by the supervisors that led to the constitutional violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

**B. Joinder**

"A party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). However, multiple parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P.

20(a)(2). The upshot of these rules is that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits." *Id.*

**II. Cramer's Allegations**

Cramer's complaint alleges the following:

**A. Legal Materials**

On December 26, 2013, Cramer was transferred to Pelican Bay from another prison. On February 6, 2014, Cramer received some of his personal and legal property. However, Officer R. Allen confiscated some of Cramer's legal papers relating to his pending state appeal. Cramer filed a grievance against Allen. On March 13, 2014, Cramer was interviewed by Officer R. Mills who said he would return some of Cramer's property if he withdrew the grievance. Cramer felt he needed his property and signed the appeal withdrawal form. However, Cramer then discovered other legal papers related to his state appeal had not been returned to him.

**B. Mail Stoppage**

On April 4, 2014, Cramer received a notice of "mail stoppage" stating that Institutional Gang Investigators Milligan and Patton had seized Cramer's incoming mail that contained a money order on the ground that he had engaged in gang activity. Cramer never received the funds sent in the money order and alleges that it was stolen by the "Institutional Gang Investigator/Investigative Services Unit." On May 19, 2014, T.E. Puget sent Cramer a memo stating that Cramer's staff complaint regarding the theft of funds was "properly rejected."

**C. "Gang Dropout" Information**

On September 4, 2014, Cramer was reviewing his central file and saw, for the first time, a false 1994 entry stating that he was a "Northern Structure (NS) gang dropout." This false entry is a "snitch label" that could cause him to be killed by another inmate. He mentioned this to Officer K. Russell who said, "It must be a mistake."

On September 11, 2014, Cramer filed a grievance claiming his lack of knowledge of the gang dropout label in his central file denied him the right to challenge its validity and denied him

1    due process at all Institutional Classification Committee reviews of his gang membership.  He also
2    claimed that the nondisclosure of this false information violated his due process rights at a 1996
3    prison hearing where he was found guilty of battery on an inmate, assessed 365 days of good time
4    credits and placed in the Secured Housing Unit for fifteen months.  Cramer also alleges that the
5    nondisclosure of the 1994 gang dropout label affected his 2007 trial where he was found guilty of
6    participating in a criminal street gang and sentenced to forty-three years to life.  His appeal of this
7    judgment is pending.

In April 2015, Cramer had his annual gang validation review by the Institutional Classification Committee.  The committee members were L. Ducart, Jeanu, Wilcox, Parry, and Swift.  Cramer told them that they had relied on false information to renew his gang validation.  Ducart stated, "You can't hold us responsible for what happened in 1994."  Wilcox stated, "Thank you for notifying us of the error, people make mistakes."  All the committee members dodged responsibility for the correcting the false information.

**II. Cramer's Claims**

Based on these allegations, Cramer asserts the following claims: (1) First and Fourteenth Amendment violations against Allen and Mills for denying Cramer access to the courts by seizing, confiscating and destroying his legal mail; (2) First, Eighth and Fourteenth Amendment violations against Puget, Bradbury, Bramucci, Townsend, Milligan, Patton, Frisk, Russell, Parry, Swift, Wilcox, Jeanu, and Briggs for impeding Cramer's "access to court as well as his right to speak freely and petition the government of grievances without retaliation and to be free from cruel and unusual punishment;" and (3) First, Eighth and Fourteenth Amendment violations against Ducart for failing to adequately train and supervise custody staff and failing to investigate the constitutional violations committed by the other defendants.  As relief, Cramer requests, in part, expunging the rules violation report against him for battery on an inmate, reinstating his forfeited good time credits, voiding his gang validation and expunging all gang references about him in his central file and in local, state and federal databases.

Liberally construed, Cramer's allegations state a First Amendment claim for lack of access to the courts against Allen and Mills for withholding legal materials relevant to his ongoing state

4

appeal. However, even liberally construed, the allegations do not state how these defendants violated his Fourteenth Amendment right to due process. The Fourteenth Amendment claim is dismissed with leave to amend.

Cramer's second claim against thirteen defendants appears to consist of two "sub-claims." The first is against Milligan and Patton for seizing his mail and taking his funds and against Puget for writing a memo stating that Cramer's complaint about the theft of his funds was properly rejected. Liberally construed, these allegations state a cognizable First Amendment claim against Milligan and Patton for seizing incoming mail and a due process claim against them for taking his funds. However, even liberally construed, the allegation about Puget writing a memo does not state a cognizable claim. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no constitutional right to a prison administrative appeal or grievance system). Therefore, this claim against Puget is dismissed with leave to amend.

Cramer's second "sub-claim" is against ten defendants—D. Bradbury, N. Bramucci, M. Townsend, J. Frisk, K. Russell, Parry, Swift, Wilcox, Jeanu and R.L. Briggs—and is apparently based on the newly discovered 1996 entry in Cramer's central file that he is a gang dropout. The complaint alleges that Cramer told Russell and the April 2015 Institutional Classification Committee consisting of Parry, Swift, Wilcox and Jeanu that the 1996 entry was false and they failed to do anything about it. However, the complaint does not mention Bradbury, Bramucci, Townsend, Frisk and Briggs. In any event, the right to relief asserted against the ten defendants for failing to take any action about the false 1996 entry does not arise out of the same transaction or occurrence as the right to relief asserted against the defendants named in the claims based upon the withholding of legal materials and the seizure of mail. Nor is there any question of law or fact common to these two groups of defendants. Therefore, the nine defendants and the claims against them are not properly joined in this lawsuit.

Improper joinder can be cured by dismissing or severing the improperly joined parties. *See* Fed. R. Civ. P. 21. The Court must conduct a prejudice analysis, including potential statute of limitations problems, before selecting dismissal over severance. *See Rush v. Sport Chalet, Inc*., 779 F.3d 973, 975 (9th Cir. 2015). Section 1983 does not contain its own limitations period. The

appropriate period is that of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in section 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Cramer would not be prejudiced by dismissal of the improperly joined claims because, if his claims accrued in September 2014, when he discovered the false entry, he would have approximately seven months to file a timely complaint. Even if the claim was determined to have accrued in 1996 when the evidence was placed in Cramer's file, he would not be prejudiced by dismissal because the claim would be time-barred even if it was severed instead of dismissed.

Therefore, the claims against the ten defendants are dismissed without prejudice; Cramer may, but is not required to, file these claims in a separate lawsuit. Although the Court makes no finding about this now, it notes that a claim that seeks to invalidate the finding that Cramer was guilty of battery on an inmate for which he was assessed good time credits may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds that, to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. *Heck* bars a claim of unconstitutional deprivation of time credits because such a claim necessarily implicates the duration of the plaintiff's sentence. *See Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996)**.** However, *Heck* does not apply to prisoner civil rights actions challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement. *Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014).

Cramer's third claim is against Ducart for generally failing to train or supervise the defendants. This conclusory allegation, even liberally construed, does not state a cognizable claim because it does not show how Ducart was personally involved in any constitutional violation. *See*

6

1  *Henry*, 678 F.3d at 1003-04; *Hydrick*, 669 F.3d at 942.  Cramer is granted leave to amend this

2  claim against Ducart, if he truthfully can do so.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. The claims against the ten improperly joined defendants are dismissed without prejudice to filing in a separate lawsuit.

2. The claims against Ducart and Puget and the Fourteenth Amendment due process claim based on the withholding of legal materials are dismissed with leave to amend.  Cramer may, but is not required to, file an amended complaint to remedy the deficiencies noted in this Order.  If Cramer chooses to file an amended complaint, he must do so within twenty-eight days from the date of this Order.  He must file the amended complaint on the Court's civil rights complaint form with the words "First Amended Complaint," on the upper right hand side of the cover page.  He must use in the caption of the Amended Complaint the name of this case and the case number C 15-4476 VC (PR).  Cramer is advised that an amended complaint supersedes the original complaint, so that he must state all his allegations in the amended complaint.  *See London V. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) (plaintiff waives all claims alleged in original complaint which are not alleged in amended complaint); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (defendants not named in amended complaint are no longer defendants).  If Cramer does not file an amended complaint within twenty-eight days from the date of this Order, these noncognizable claims will be dismissed with prejudice.

3. Cramer's allegations, liberally construed, appear to state a cognizable First Amendment claim against Allen, Mills, Milligan and Patton and a Fourteenth Amendment claim against Milligan and Patton.

4. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint (docket no. 1) and all attachments thereto and a copy of this Order to Officers Allen and Mills and Institutional Gang Investigators Milligan and Patton at Pelican Bay State Prison.  The Clerk shall also mail a courtesy copy of the complaint with all attachments and a copy of this Order to the

State Attorney General's Office in San Francisco, and a copy of this Order to Cramer.

    5. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and the complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Cramer, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver forms. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), Defendants will not be required to serve and file an answer or other responsive pleading before sixty days from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.)

    Defendants are advised to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the answer shall be due sixty days from the date on which the request for waiver was sent or twenty days from the date the waiver form is filed, whichever is later.

    6. The following briefing schedule shall govern dispositive motions in this action:

        a. No later than thirty days from the date the answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. If Defendants file a motion for summary judgment, it shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Cramer.

    At the time of filing the motion for summary judgment or other dispositive motion, Defendants shall comply with the Ninth Circuit's decision in *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012), and provide Cramer with notice of what is required of him to oppose a summary judgment motion. If the motion is based on non-exhaustion of administrative remedies,

8

1   Defendants must comply with the notice and procedural requirements in *Albino v. Baca*, 747 F.3d
2   1162 (9th Cir. 2014). *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).
3                   b. Cramer's opposition to the motion for summary judgment or other dispositive
4   motion shall be filed with the Court and served on Defendants no later than twenty-eight days
5   after the date on which Defendants' motion is filed.
6           Before filing his opposition, Cramer is advised to read the notice that will be provided to
7   him by Defendants when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure
8   and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come
9   forward with evidence showing triable issues of material fact on every essential element of his
10  claim). Cramer is cautioned that because he bears the burden of proving his allegations in this
11  case, he must be prepared to produce evidence in support of those allegations when he files his
12  opposition to Defendants' summary judgment motion. Such evidence may include sworn
13  declarations, that is statements from himself and other witnesses signed under penalty of perjury,
14  copies of documents authenticated by sworn declaration, or copies of discovery documents such as
15  answers to interrogatories and depositions. Cramer will not be able to avoid summary judgment
16  simply by repeating the allegations of his complaint.
17          The same evidentiary requirement applies if the defendants file a motion for summary
18  judgment for failure to exhaust administrative remedies. To oppose this motion, Cramer must
19  present any evidence he may have which tends to show that he did exhaust administrative
20  remedies or was excused from doing so. Again, the evidence may be in the form of declarations,
21  that is statements of fact from himself and other witnesses signed under penalty of perjury, copies
22  of documents accompanied by a declaration showing where they came from and why they are
23  authentic, or discovery documents such as answers to interrogatories or depositions. In
24  considering a summary judgment motion for failure to exhaust administrative remedies, the Court
25  can decide disputed issues of fact with regard to this portion of the case. *See generally Albino*,
26  747 F.3d at 1172-73; *Stratton*, 697 F.3d at 1008.
27                  c. Defendants shall file a reply brief no later than fourteen days after the date
28  Cramer's opposition is filed.

        d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

    7. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. No further court order pursuant to Rule 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

    8. All communications by Cramer with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or counsel.

    9. It is Cramer's responsibility to prosecute this case. Cramer must keep the Court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

    10. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than <u>fourteen</u> days prior to the deadline sought to be extended.

    11. The Clerk of the Court shall send Cramer two blank civil rights forms with this Order.

**IT IS SO ORDERED**.

Dated: January 28, 2016

_____
VINCE CHHABRIA
United States District Judge